UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE BROWN JUG, INC.,

    Plaintiff,

vs.

THE CINCINNATI INSURANCE CO.,

    Defendant.
_____/

Civil Action No. 20-CV-13003

HON. BERNARD A. FRIEDMAN

## **OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

This matter is presently before the Court on defendant's motion to dismiss plaintiff's amended complaint ("Am. Compl.") [docket entry 8]. Plaintiff has responded and defendant has replied. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing.

Plaintiff owns two restaurants in the City of Ann Arbor: "The Little Brown Jug" and "The Back Room." Am. Compl. ¶¶ 2-3. Defendant, The Cincinnati Insurance Company ("defendant"), is an Ohio-based insurance provider. *Id.* ¶ 4. The COVID-19 pandemic has caused devastating economic losses to businesses around the country, including plaintiff's two restaurants. In the present suit, plaintiff seeks property insurance coverage for those losses.

"Plaintiff purchased a commercial property insurance policy . . . from Defendant to protect the business in the event of property loss and business interruption [from] September 30, 2019 to September 30, 2020 ('the Policy')." *Id.* ¶ 11. As relevant here, "the Policy provides coverage[] for loss to the structures and business personal property in the amount of $655,000.00, as well as business income coverage in the amount of the actual loss sustained over a maximum period of 12 months." *Id*. Plaintiff alleges that because of the COVID-19 pandemic

and the related public health precautions adopted by state and local governmental authorities (i.e., the "Stay at Home Orders"), "Plaintiff was forced to temporarily close and otherwise greatly reduce operations." *Id*. ¶¶ 12, 15. At the time plaintiff's amended complaint was filed, "[o]ver 400,000 Americans" had died of COVID-19, with "over 540,000 COVID-19 cases and over 14,000 confirmed deaths caused by the virus" in the State of Michigan.[1] *Id*. ¶¶ 19-20. Plaintiff states that "[a]ccording to the CDC . . . COVID-19 can be transmitted in several ways, including via human-to-human contact, airborne viral particles in ambient air, and touching surfaces or objects." *Id*. ¶ 24.

Plaintiff alleges that because of the scale and severity of the COVID-19 pandemic and, in particular, the way in which the disease is transmitted, plaintiff sustained financial loss and physical loss to its property. In particular, plaintiff emphasizes the role of "droplets" in COVID-19 transmission, stating that after COVID-19-infected droplets land on "objects and surfaces, COVID-19 can remain present and dangerous for periods ranging from hours to many days." *Id*. ¶ 36. Plaintiff was consequently forced to clean and disinfect surfaces, remodel and reconfigure physical spaces, and take "other measures to reduce or eliminate the presence of COVID-19 on its property." *Id*. ¶ 59. Plaintiff adds that the COVID-19 pandemic has caused physical loss to its property as well, "making [the restaurants] unsafe and unusable and thereby lost." *Id*. ¶ 60. Plaintiff further alleges that executive orders issued by Michigan's governor and emergency orders issued by the Michigan Department of Health and Human Services closed

---

[1] The Centers for Disease Control and Prevention currently reports that COVID-19 has caused 583,596 American deaths, *see* https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last visited May 19, 2021), while Michigan reports 878,125 cases and 18,710 deaths. *See* https://www.michigan.gov/coronavirus/ (last visited May 19, 2021).

and/or severely restricted public access to bars, restaurants, and other businesses across the state during most of 2020. *See id*. ¶¶ 65-68 (citing EO 2020-09, EO 2020-21, MICH. COMP. LAWS § 333.2253).

Plaintiff alleges that "[t]he Policy is an all-risk or open peril policy, meaning the Policy cover[s] all direct loss unless the loss is expressly excluded." *Id*. at ¶ 87. Plaintiff adds that "the Policy [did] not exclude or limit coverage for losses from COVID-19 or pandemics," *see* ¶ 91, despite the fact that "[t]he risk of a virus like COVID-19 was foreseeable to, if not foreseen by, insurance companies like the Defendant." *Id*. at 92. Plaintiff states that the Policy provides coverage for:

> a. losses sustained due to the necessary interruption of business conducted by the Plaintiff and caused by direct physical loss or damage ("Business Income" coverage)
>
> b. extra expenses necessarily incurred to minimize interruption of business and to continue operations ("Extra Expense" coverage); and
>
> c. interruption of business caused by an order from a civil authority ("Civil Authority" coverage).

*Id*. ¶ 88. Plaintiff contends that it timely submitted a claim to defendant requesting payment of insurance benefits and that defendant "unlawfully denied coverage and refused to cover Plaintiff's COVID-19 losses." *Id*. ¶¶ 89-90 (citing Ex. A – Denial Letter).

Plaintiff asserts claims for "Declaratory and Injunctive Relief" and "Breach of Contract" under the Policy's Business Income, Extra Expense, and Civil Authority provisions (Counts I-VI), "Appraisal" (Count VII), and "Violation of the Michigan Uniform Trade Practices Act" (Count VIII). For relief, plaintiff requests compensatory damages, attorney fees,

3

costs, and declaratory relief clarifying "the parties' respective rights and duties under the Policy and . . . [that] the aforementioned conduct of Defendant [was] unlawful and in material breach of the Policy so that future controversies may be avoided." *Id.* ¶ 108.

In the instant motion, defendant seeks dismissal of plaintiff's amended complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). To survive this motion, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Two principles underlie this standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.

*Id.* at 678-79 (2009) (internal quotation marks and citations omitted). For the following reasons, the Court concludes that the amended complaint fails to state a claim for which relief may be granted.

Defendant argues that because plaintiff failed to establish that it suffered "direct physical loss" or "direct physical damage" to property, there was no "Covered Cause of Loss," which "is an express requirement for *any* coverage under the Policy." Def.'s Br. at 6 (emphasis

4

in original); *see also id*. at 16-19.  Defendant contends that the physical loss or damage requirement is unambiguous and thus "must be applied as written." *Id*. at 14-15.  Defendant cites the Policy's Period of Restoration provision as "further evidence to show there is no direct physical loss or damage in the absence of actual, tangible damage to property." *Id*. at 22.  This provision states that the "[p]eriod of restoration" "[b]egins at the time of direct 'loss'" and "[e]nds on the earlier of:  (1) The date when the property at the 'premises' should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location."  Def.'s Ex. A (Policy) at 536-37, 378.  Defendant adds that because plaintiff failed to establish that the Coronavirus caused direct physical loss to its property, the absence of a "virus coverage exclusion" is irrelevant.  *Id*. at 22-23.

As to the Policy's Civil Authority provision, defendant argues that it also requires direct physical loss or damage to property.  Whereas the Business Income provision requires such damage to plaintiff's own property, the Civil Authority provision requires direct physical loss or damage to the property of others that causes "a civil authority to issue an order prohibiting access to the Plaintiff's premises."  *Id*. at 24 (emphasis omitted) (citing Def.'s Ex. A (Policy) at 273, 331).  Defendant argues that plaintiff has failed to sufficiently allege that the virus caused physical loss or damage to the property of others or that the relevant state and local orders prohibited access to plaintiff's restaurants, as "employees and customers remained free to access the premises."  *Id*. at 24-25 (citing Am. Compl. at ¶¶ 64, 66, 68, 71, 73).

In response, plaintiff emphasizes the physical nature of the virus and contends that it

> has alleged a covered cause of loss under the policy:  COVID-19 on its premises, in the form of fomites,[2] and respiratory droplets

5

or nuclei containing COVID-19 attached to insured property.

> [2] "Fomite" means an object (such as a dish, doorknob, or article of clothing) that may be contaminated with infectious agents (such as bacteria or viruses) and serve in their transmission. *See* https://www.merriam-webster.com/dictionary/fomite (last accessed March 10, 2021).

Pl.'s Resp. at 2. Plaintiff argues that

> the presence of COVID-19 constituted a direct physical loss to property because the property was infested by a harmful agent that rendered it unusable or impaired its function. This loss resulted in a suspension of operations (as defined by the policy) triggering coverage. Similarly the spread of COVID-19 at neighboring properties resulted in governmental orders triggering coverage under the civil authority provisions of the policy.

*Id*. at 2-3. Plaintiff contends that defendant simply chose not to include a virus exclusion in its terms of coverage and cannot now ask the Court to read one into the Policy. *Id*. at 3.

The question before the Court is essentially whether interruptions to daily life caused by the COVID-19 pandemic, as alleged in plaintiff's amended complaint, plausibly resulted in "direct physical loss or damage to property." The Court concludes that they did not.

"A federal court sitting in diversity applies the substantive law of the forum state." *Adkins v. Chrysler Fin. Corp.*, 344 F. App'x 144, 147 (6th Cir. 2009). "When deciding a diversity case under state law, a federal court must apply the law of the state's highest court. If, however, the state's highest court has not decided the applicable law, then the federal court must ascertain the state law from all relevant data," which include judgments from the state appellate court. *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3 1126, 1130 (6th Cir. 1995) (internal quotation marks and citations omitted).

In Michigan, "an insurance contract must be enforced in accordance with its

terms." *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193 (Mich. 1999). "Terms in an insurance policy must be given their plain meaning and the court cannot create an ambiguity where none exists." *Heniser v. Frankenmuth Mut. Ins. Co.*, 534 N.W.2d 502, 505 (Mich. 1995). "However, if an insurance policy provision is ambiguous, a reviewing court construes it against the drafting insurer and in favor of the insured." *Anton v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 08-CV-11920, 2009 WL 10679414, at *3 (E.D. Mich. Oct. 23, 2009), *aff'd*, 634 F.3d 364 (6th Cir. 2011). "Michigan courts engage in a two-step analysis when determining coverage under an insurance policy: (1) whether the general insuring agreements cover the loss and, if so, (2) whether an exclusion negates coverage." *K.V.G. Props., Inc. v. Westfield Ins. Co.*, 900 F.3d 818, 821 (6th Cir. 2018) (citing *Auto-Owners Ins. Co. v. Harrington*, 565 N.W.2d 839, 841 (Mich. 1997)).

The Sixth Circuit, applying Michigan law, has held that in order to trigger insurance coverage where the policy terms require "direct physical loss or damage," the insured property must be physically lost, damaged, replaced, or uninhabitable. *See Universal Image Prods. Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 573-75 (6th Cir. 2012). In *Universal*, the Sixth Circuit affirmed the trial court's conclusion that costs incurred in an effort to rid plaintiff's building of mold and bacteria contamination were not covered under plaintiff's insurance policy. *Id*. at 537. The court specifically noted that "not a single piece of [plaintiff's] property was lost or damaged as a result," deeming the losses to be "economic," "not tangible, physical losses." *Id*.

Due to the widespread impact of the COVID-19 pandemic, courts in Michigan and across the country have had to answer the precise question that is raised in the present case

7

under essentially the same facts and against identical, or substantively identical, insurance policy terms. "Courts are nearly unanimous in their agreement that such claims have no merit." *St. Julian Wine Co. v. Cincinnati Ins. Co.*, No. 20-CV-374, 2021 WL 1049875, at *1 (W.D. Mich. Mar. 19, 2021) (interpreting policy terms that are identical to those at issue in the present case). In reaching this conclusion, another court in this district has noted that

> [a]s a leading treatise on property insurance—cited by the Sixth Circuit—explains, usually a property insurance "policy specifically ties the insurer's liability to the covered peril having some specific effect on the property." *"Physical" loss or damage*, 10A Couch on Ins. § 148:46. And, "[i]n modern policies . . . this trigger is frequently 'physical loss or damage' but may be any of several variants focusing on 'injury,' 'damage,' and the like." *Id*. A policy requirement that a loss be physical "is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." *Id*.

*Kirsch v. Aspen Am. Ins. Co.*, No. 20-11930, 2020 WL 7338570, at *4 (E.D. Mich. Dec. 14, 2020), *appeal docketed*, No. 21-1038 (6th Cir. Jan. 14, 2021) (emphasis in original). The Court in *Kirsch* concluded that "[l]ike other viruses, COVID-19 injures people but does not seem to cause any lasting damage to physical property. Because plaintiff's claim, as pled, alleges only a temporary loss of use of Plaintiff's property, the tangibility requirement implicit in the policy forecloses a claim." *Id*. at *6. Similarly, the court in *Turek Enters. Inc. v. State Farm Mutual Auto. Ins. Co.*, 484 F. Supp. 3d 492, 502 (E.D. Mich. 2020), found that substantially similar insurance coverage terms (requiring "accidental direct physical loss to Covered Property") were unambiguous and "plainly require[d] Plaintiff to demonstrate some tangible damage to Covered Property." The court concluded that "[b]ecause Plaintiff has failed to state such damage, the

complaint does not allege a Covered Cause of Loss." *Id*.

Having reviewed the parties' briefs, the Policy terms, and the relevant case law, the Court concludes that the natural meaning of the terms "accidental physical loss or accidental physical damage" requires that the insured experience a loss different in nature than that alleged in the present case. Plaintiff alleges that the virus's physical presence on restaurant surfaces resulted in significant losses – money spent on cleaning supplies and the rearranging of furniture, customers barred from entry due to temporary Stay at Home Orders, and income lost due to lingering public health restrictions and public trepidation. While potentially devastating economically, none of the losses alleged were tangible, physical losses as required under the Policy.

The Policy's "period of restoration" provision confirms this construction of the relevant terms. The policy requires defendant to pay for business income lost until "the earlier of: (1) the date when the property at the premises should be repaired, rebuilt or replaced with reasonable speed and similar quality, or (2) the date when business is resumed at a new permanent location." Def.'s Ex. A (Policy) at 536-37, 578 (internal quotation marks omitted). Reading the terms "physical loss" or "physical damage" to mean complete or partial physical damage or destruction of property seamlessly complements the policy's "period of restoration" provision. If property is partially destroyed, it would need to be "repaired, rebuilt, or replaced." If property is completely destroyed, a policy holder would need to resume business "at a new permanent location." Further, while plaintiff alleges that it has had to undertake various remedial measures as a result of the COVID-19 pandemic, including the disinfecting and rearranging of furniture, plaintiff fails to allege that the COVID-19 pandemic caused plaintiff

9

to repair, rebuild, or replace any property or that it had to relocate to a new location as a result.

Various courts have previously determined whether defendant's property insurance policy plausibly covers COVID-19-related claims. The vast majority have found that it does not. *See, e.g.*, *Rye Ridge Corp. v. Cincinnati Ins. Co.*, No. 20 CIV. 7132-LGS, 2021 WL 1600475, at *3 (S.D.N.Y. Apr. 23, 2021) ("Plaintiffs . . . argue that 'loss' does not require structural alteration. This argument misses the point that, under New York law, 'loss' as it is used in the Policies does not mean loss of use; instead there must be some physical damage to the premises."); *St. Julian Wine Co.*, 2021 WL 1049875, at *3 ("The coronavirus has not physically altered any property, and St. Julian does not plausibly allege that its property became unusable. Thus, St. Julian did not suffer a 'loss' as defined by the Policy."); *ILIOS Prod. Design, LLC v. Cincinnati Ins. Co., Inc.*, No. 1:20-CV-857-LY, 2021 WL 1381148, at *10 (W.D. Tex. Apr. 12, 2021) (concluding that "[i]n short, the pandemic impacts human health and human behavior, not physical structures"); *Woolworth LLC v. Cincinnati Ins. Co.*, 20-CV-01084, 2021 WL 1424356, at *5-6 (N.D. Ala. Apr. 15, 2021) (collecting cases).

In *Woolworth LLC*, the court ordered defendant to "list every state and federal decision that has applied the same policy to a COVID shutdown-related claim." 2021 WL 1424356, at *5. In response, defendant indicated that as of April 7, 2021, twenty state and federal trial courts had dismissed or granted summary judgment on such claims and only five courts had denied motions to dismiss. *Id*. The court "found clear consensus that the terms 'physical loss' and 'physical damage' in [defendant's] policy require some material change to the insured's property that requires repair or replacement." *Id*. at *6. The court added "that nearly every court has read the terms 'physical loss' and 'physical damage' the same way . . .

[which] supports the court's conclusion that the policy has a plain, unambiguous meaning–a meaning that does not cover [plaintiff's] claims for business income, extra expense, and civil authority coverage." *Id.*

The Court adopts the majority view and concludes that plaintiff has failed to sufficiently allege direct physical loss or damage to property – plaintiff's own or that of others – and, therefore, has failed to plausibly state a covered cause of loss or claim for relief under the Policy.[2] Accordingly,

IT IS ORDERED that defendant's motion to dismiss is granted.

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
Dated: May 27, 2021         SENIOR UNITED STATES DISTRICT JUDGE
Detroit, Michigan

---

[2] Because plaintiff has failed to allege a covered cause of loss under the Policy, the Court need not address whether an exclusion negates coverage. *See K.V.G. Props., Inc.*, 900 F.3d at 821.